# UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| *In re*: | Case No. 10-72175-FJS |
| Gail Lee Schechter, | |
| *Debtor*. | Chapter 13 |

## MEMORANDUM OPINION

This matter comes before the Court upon the Board of Directors of Bay Point Association and Bay Point Association's Motion for Relief from the Automatic Stay. The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. § 1408.

The issue presented is whether condominium fees assessed after the filing of a petition for relief under Chapter 13 of Title 11 are pre-petition claims subject to discharge under 11 U.S.C. § 1328(a). The Court concludes that post-petition condominium assessments are post-petition debts arising from covenants running with the land. Nevertheless, for the reasons that follow, the Motion for Relief from the Automatic Stay is DENIED.

1

## I. FINDINGS OF FACT

### A. Introduction

The essential facts of this matter are not in dispute. In August 2005, Gail Lee Schechter (the "Debtor") purchased a condominium unit (collectively "Condominium" or "Unit") in Norfolk, Virginia located at 5321 Spy Glass Drive (the "Property"). The Property is subject to a Declaration (the "Declaration") by Bay Point Association (collectively "Bay Point" or the "Association"), which provides that ownership of the Property subjects its owner to obligations of membership in the Association, including monthly assessment of fees.

The Debtor filed a voluntary petition for relief pursuant to Chapter 13 of Title 11 of the United States Code on May 5, 2010. On May 7, 2010, the Debtor filed her Chapter 13 Plan (the "Plan"). The Plan provides for partial satisfaction of two secured claims filed by BAC Home Loan Servicing, LP ("Bank of America") on account of first and second priority deeds of trust (the "Mortgages") by surrendering the Property. The Plan also provides a forty-one percent (41%) dividend to general unsecured creditors. Although Bay Point was not listed as a creditor on the schedules filed with the Petition, on October 21, 2010, the Debtor filed an amended Schedule F, including Bay Point as an unsecured creditor with a claim of $2,700.00 for "unknown association dues." On November 22, 2011, the Court granted Bay Point's Motion for Leave to File Late Proof of Claim, approving the filing of a claim in the amount of $2,564.71 for unpaid condominium assessments for the months of June 2010 through October 2010, plus late fees, interest, costs, and attorneys' fees.[1]

---

[1] The Court does not consider whether the Order Approving Bay Point's Motion for Leave to File Late Proof of Claim has an issue preclusive effect with respect to Bay Point's contention that post-petition condominium assessments are post-petition debts. *See, e.g., In re Finney*, 130 F. App'x 527, 529 (3rd Cir. 2005) ("The general rule is that the failure to plead or raise in a timely manner matters calling for the application of the doctrine of *res*

2

Despite vacating the Condominium shortly after filing the Petition, the Debtor has retained title to the Property. This, apparently, is not by choice, but due to the upside down nature of the Mortgages. Upon confirmation of the Plan, on July 9, 2010, the Court lifted the automatic stay, permitting Bank of America to foreclose on the Property.[2] Despite the Debtor's non-payment of the Mortgages, however, Bank of America has elected not to exercise its foreclosure rights.[3] In October 2010, a fire substantially destroyed the Condominium. The Debtor did not repair the Unit, and did not have casualty insurance covering same. Having been significantly depreciated by the fire and ensuing state of disrepair, the Property is presently "worth substantially less than [the amount the Debtor] owes to Bank of America."[4] The Debtor advises that she has "not recently been in communication with Bank of America except through counsel, and has no information regarding Bank of America's future plans for foreclosing or rebuilding the [P]roperty."[5] This remains the state of affairs to date.

---

*judicata* and collateral estoppel is regarded as a waiver.").

[2] Section 3(B) of the Plan specifically provides for the surrender the Property in partial satisfaction of Bank of America's secured claims totaling $310,383.79 and $92,205.00. Section 3(B) further provides: "To the extent that the [Property] does not satisfy the claim[s], any timely filed deficiency claim to which the creditor is entitled may be paid as a non-priority unsecured claim[s]. Confirmation of the Plan shall terminate the automatic stay as to the interest of the debtor(s) and the estate in the collateral."

[3] The Debtor further represents that, although Bank of America maintains a force-placed insurance policy on the Property, it had not placed a claim with the insurance company for the fire damage as of the date of the Final Hearing.

[4] Stip. ¶ 12.

[5] Bank of America filed a Motion for Relief from the Automatic Stay on June 28, 2012; a preliminary hearing on same was convened on July 24, 2012. At the preliminary hearing, Bank of America, through counsel, stated that, due to the damage to the Property, it was uncertain whether Bank of America would proceed to foreclose on the Property if granted relief from the automatic stay. The preliminary hearing was continued to September 18, 2012, to permit Bank of America additional time to investigate: (1) the existence, if any, of force-placed insurance on the Property; and (2) whether Bank of America intends to foreclose on the Property if granted relief from the automatic stay.

3

### B. The Motion for Relief

On September 6, 2011, Bay Point filed a motion styled as "Motion for Relief From Debtor Stay" pursuant to 11 U.S.C. § 362(d) (the "Motion"), citing the Debtor's failure to make post-petition Association assessment payments and disrepair to the Unit. The Motion alleges that "between November 2011 through August 2011, the Debtor accrued $3,790.00 in unpaid assessments, together with $100.00 in late fees, and $38.00 in interest" in contravention of the Declaration. On October 3, 2011, the Debtor filed a response to the Motion, arguing a lack of cause pursuant to Section 362(d), and asserting an affirmative defense that said assessments are pre-petition debts subject to discharge under 11 U.S.C. § 1328(a).

On October 4, 2011, the Court convened a preliminary hearing on the Motion. Appearances were made by counsel for Bay Point and the Debtor. The Court scheduled a final hearing on the Motion for November 22, 2011. Thereafter, on November 8, 2011, the Debtor filed a memorandum of points and authorities in which she reasserted her argument that post-petition condominium assessments are subject to discharge under 11 U.S.C. § 1328(a).

The Court convened a final hearing on the Motion on November 22, 2011 (the "Final Hearing"). At the conclusion of the Final Hearing, the Court provided the parties twenty-one (21) days to file supplemental briefs and a stipulation of facts. The parties filed a stipulation of facts on December 12, 2011. Supplemental briefs were filed by Bay Point and the Debtor on December 12, 2011 and December 13, 2011, respectively.

### C. Positions of the Parties

The Motion seeks relief from the automatic stay under 11 U.S.C. § 362(d) to recover

condominium association assessments that accrued post-petition against the Debtor.[6] The Association advances a three-part argument in support of its conclusion that it is entitled to relief from the automatic stay. First, the Association argues that the Debtor's obligation to pay condominium assessments is a continuing post-petition obligation, and is extinguished only by transferring title to the Property. Relying on the Fourth Circuit Court of Appeal's decision in *Rosenfeld v. River Place East Housing Corp. (In re Rosenfeld)*, 23 F.3d 833 (4th Cir. 1994), *cert. denied*, 513 U.S. 874 (1994), *reh'g denied*, 513 U.S. 1035 (1994), the Association argues: (1) the Debtor's "obligation to pay the assessments arises from her continued post-petition ownership of the [P]roperty;" (2) said obligation derives from "one of many covenants running with the land;" and (3) the obligation is only terminable upon "transfer [of] title to the property, if necessary by a deed in lieu of foreclosure." In sum, the Association's position is that, because the Debtor has not transferred title to the Property, she remains record owner of same and, therefore, is obligated to pay ongoing condominium assessments, notwithstanding her "surrendering" of the Property under a confirmed Chapter 13 plan.

Second, the Association argues that post-petition association assessments are not subject to discharge under Section 1328(a). Bay Point sets forth two bases for this conclusion. Relying on Section 1328(a)'s specification that the "the court *shall* grant the debtor a discharge of all debts provided for by the plan," the Association first argues that, while the Plan provides for

---

[6] While the Motion is unclear, the Court concludes that the Association seeks relief from the automatic stay in order to initiate a state court suit against the Debtor and obtain a judgment arising from the unpaid post-petition assessments. This is supported by the Association's reliance on section 55-79.53(A) of the Code of Virginia, which states, in relevant part:

> "The declarant, every unit owner, and all those entitled to occupy a unit shall comply with all lawful provisions of this chapter and all provisions of the condominium instruments. Any lack of such compliance shall be grounds for an action or suit to recover sums due, for damages or injunctive relief, or for any other remedy available at law or in equity, maintainable by the unit owners' association, or by its executive organ or any managing agent on behalf of such association, or, in any proper case, by one or more aggrieved unit owners on their own behalf or as a class action."

Va. Code. § 55-79.53(A).

5

payment of pre-petition assessments as general unsecured claims, it does not specifically provide for post-petition assessments. 11 U.S.C. § 1328(a) (emphasis added). Alternatively, the Association contends that the "right to payment of post-petition dues does not arise until the dues are assessed" and, therefore, that post-petition assessments may not be discharged as pre-petition debts pursuant to Section 1328(a).

Finally, Bay Point concludes that cause exists to modify the automatic stay pursuant to 11 U.S.C. § 362(d)(1). Having argued that post-petition assessments are post-petition debts, the Association asserts that "continuation of the automatic stay . . . will work irreparable harm and deprive the Movants of the adequate protection to which they are entitled." In short, because the Debtor's obligation to pay post-petition assessments will survive the Chapter 13 discharge, allowing such assessments to accrue continually will negatively impact the Association. *See, e.g., In re Rivera*, 256 B.R. 828, 831 (Bankr. M.D. Fla. 2000) ("[C]ommunity associations rely on the ability to assess property owners solely as a condition of ownership of property [and] generally have no source of funds with which to operate without such assessment power.").

In response, the Debtor argues that the Motion should be denied because post-petition assessments are pre-petition debts subject to discharge under Section 1328(a). The Debtor contends that "by failing to except [Section] 523(a)(16) debts from the scope of a Section 1328(a) discharge, Congress has provided Chapter 13 debtors a means of discharging post-petition association assessments." Alternatively, the Debtor argues that the Motion should be denied because Bay Point "has failed to present evidence sufficient to meet their burden of proof that 'cause' exists to modify the stay under 11 U.S.C. § 362(d)." Specifically, the Debtor contends that the prejudice to the Association of permitting the automatic stay to remain in effect "is impossible to determine because [Bay Point] chose to present no evidence of what hardship, if any, that they were experiencing as a result of the automatic stay. Instead, they have simply pointed out their entitlement to assess the monthly amounts and the non-payment of the same by

the Debtor, but . . . have presented no testimony or stipulations of fact from which the Court can ascertain the impact of the Debtor's non-payment of the assessments to the [Association.]" The Debtor also asserts that granting the Motion would cause her significant prejudice, as "any reduction in her disposable income from [Bay Point's] direct collection of post-petition assessments will necessarily result or perhaps eliminate the funds available to the bankruptcy estate."

## II. CONCLUSIONS OF LAW

Subject to certain enumerated exceptions, 11 U.S.C. 1328(a) discharges pre-petition debts upon confirmation and completion of a Chapter 13 plan. On the other hand, debts arising after the petition date are not generally dischargeable. *See In re Ripley*, 926 F.2d 440, 443 (5th Cir. 1991) ("As a general rule, bankruptcy proceedings do not address post-petition claims."). Additionally, the automatic stay "does not prevent the commencement of a lawsuit to collect a post-petition debt." *Montclair Prop. Owners Assoc., Inc. v. Reynard (In re Reynard)*, 250 B.R. 241, 243 (Bankr. E.D. Va. 2000) (citing *In re Henline*, 242 B.R. 459, 467 (Bankr. D. Minn. 1999)). Therefore, the Court must decide whether condominium association dues assessed after the filing of a bankruptcy petition are pre-petition debts or post-petition debts.

### A. The Post-petition Condominium Assessments are Post-petition Debts

### 1. The Statutory Framework.

The Court begins its analysis by observing that "[the] starting point for any issue of statutory interpretation . . . is the language of the statute itself." *In re Maharaj*, 681 F.3d 558 (4th Cir. 2012) (quoting *United States v. Bly*, 510 F.3d 453, 460 (4th Cir. 2007)) (quotation marks omitted); *accord United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (concluding that statutory interpretation "begins where all such inquiries must begin: with the language of the statute itself"). Section 1328(a) of the Bankruptcy Code provides, in pertinent part:

7

> [A]s soon as practicable after the completion of all payments under the plan . . . unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under [S]ection 502 of this title.

11 U.S.C. § 1328(a). The Bankruptcy Code defines "debt" as a "liability on a claim." 11 U.S.C. § 101(12). "Claim," in turn, is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The term "right to payment" is not defined by the Bankruptcy Code. However, in *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991), the Supreme Court stated:

> We have previously explained that Congress intended by this language to adopt the broadest available definition of "claim." In *Davenport*, we concluded that "'right to payment' [means] nothing more nor less than an enforceable obligation . . . ."

*Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (*quoting Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990); *citing Ohio v. Kovacs*, 469 U.S. 274, 279 (1985)). Nevertheless, as recently noted by one court faced with the task of deciding whether post-petition condominium assessments are post-petition debts, "[i]t does not follow . . . that the definition of claim is 'unbounded.'" *In re Spencer*, 457 B.R. 601, 606 (E.D. Mich. 2011). As observed by Judge Robert H. Cleland of the United States District Court for the Eastern District of Michigan:

> To the contrary, there is no claim without a "right to payment," however uncertain, [and] a claim must ultimately find some foundation in an obligation that a creditor—at some point in time and under some conditions—could enforce against the debtor. Such right need not immediately enforceable at the time of filing for the right to constitute a claim. A claim may be contingent or unmatured yet remain a claim for purposes of bankruptcy law. At the time of the bankruptcy petition, however, it must be a right at least potentially enforceable by the creditor.

8

*Id.* Accordingly, the Court must determine whether condominium association dues assessed post-petition arose prior to—or were at least "potentially enforceable obligations" at the time of—the filing of the Petition.

**2. The Nature and Timing of Post-petition Condominium Assessments.**

In general, whether a debt arose pre-petition is resolved by reference to federal law. *See Butler v. NationsBank, N.A.*, 58 F.3d 1022, 1029 (4th Cir. 2008) ("[T]o determine when a claim arises for bankruptcy purposes, reference is to be made to federal bankruptcy law rather than to state law."). "While other courts apply several different tests to determine when a claim arises, in the Fourth Circuit Court of Appeals [courts] apply the conduct test." *In re Camellia Food Stores, Inc.*, 287 B.R. 52, 57 n.2 (Bankr. E.D. Va. 2002) (citing *Grady v. A.H. Robbins Co.*, 839 F.2d 198, 202 (4th Cir. 1988)). "The 'conduct test' focuses on the 'actual act that gives rise to a state or federal claim . . . not the contingency that gives rise to the right of payment." *In re Boyette*, No. 09-04573-8-RDD, 2010 WL 4777631, at *2 (Bankr. E.D. N.C. Nov. 17, 2010). In *In re Baseline Sports Inc.*, Judge Stephen C. St. John of this Court explained how the conduct test is to be applied:

> Given the broad definition that the Code gives to the term "claim," the Fourth Circuit "specifically rejected the concept that a right of payment must exist prior to the bankruptcy filing in order for a claim to arise pre-petition. Instead, it applied a conduct test where it merely required the events giving rise to a claim occur pre-petition." Whether a claim arises pre-petition, therefore, turns on whether the events giving rise to the claim occurred prior to the date the Debtor filed its bankruptcy petition.

*In re Baseline Sports, Inc.*, 393 B.R. 105, 128 (Bankr. E.D. Va. 2008) (citations omitted).

On the other hand, the existence and nature of property rights and enforceable obligations

is determined solely by reference to non-bankruptcy law. *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000); *see also Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."). In *Raleigh v. Illinois Dept. of Revenue*, the Supreme Court observed:

> The "basic federal rule" in bankruptcy is that state law governs the substance of claims, Congress having "generally left the determination of property rights in the assets of a bankrupt's estate to state law." Accordingly, when the Bankruptcy Code uses the word 'claim'—which the Code itself defines as a 'right to payment,' 11 U.S.C. § 101(5)(A)—it is usually referring to a right to payment recognized under state law. As we stated in *Butner*, "[p]roperty interests are created and defined by state law," and "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."

*Raleigh*, 530 U.S. at 20 (citations omitted).

Applying these principles, the Fourth Circuit Court of Appeals previously concluded that post-petition assessments are incidents of property ownership deriving from covenants running with the land, and thus are post-petition debts. *See In re Rosenfeld*, 23 F.3d at 836-37. In *Rosenfeld*, the Fourth Circuit expressly rejected the view that "a claim for post-petition assessments arises pre-petition and is extinguished by the bankruptcy discharge." *Id.* In determining the nature and timing of post-petition condominium assessments, the Court looked toward Virginia state law governing cooperatives:

> The Virginia Real Estate Cooperative Act provides for allocation of a cooperative's common expenses among its owners pursuant to its declaration. Va.Code Ann. § 55–444 . . . . The Act requires that the Declaration be executed and recorded in the same manner as a deed. Va. Code Ann. § 55–438 (Michie 1986) . . . . Under the Declaration, the obligation to pay assessments is a function of owning the land with which the covenant runs. Thus, [the debtor's] obligation to pay the assessments arose from his continued post-petition ownership of the property and not from a pre-petition contractual obligation. *In re Raymond*, 129 B.R. at 364. The post-petition assessments were for the upkeep of common areas

10

> and other common expenses during [the debtor's] post-petition ownership. [The condominium association's] right to payment for post-petition assessments did not arise pre-petition and was not extinguished by [the debtor's] bankruptcy discharge.[7]

*Id.* at 837. The Court of Appeals further concluded that the debtor's obligation to pay assessments continues as long as he remains record owner, for "even if the debtor has not exercised the benefits of ownership, as title holder he has the legal right to do so." *Id.* at 838. Accordingly, "[i]n order to terminate his responsibility for assessments, [the debtor] must transfer title to the property, if necessary by a deed in lieu of foreclosure." *Id.*

In the instant case, the parties stipulate that, pursuant to the Declaration, ownership of the Property subjects its owner to obligations of membership in the Association, including monthly assessment of fees. The parties also stipulate that the Debtor has not effectuated transfer of title, and remains record owner of the Property.[8] Accordingly, the Court concludes that the Debtor's obligation to pay post-petition assessments to Bay Point constitutes a post-petition debt to which

---

[7] As the Court explained, this result is consistent with the "conduct test" previously articulated by the Fourth Circuit in *Grady v. A.H. Robbins, Co., Inc.*:

> This court's decision in *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198 (4th Cir.), *cert. dismissed*, 487 U.S. 1260 (1988), does not require a contrary result. *Grady* involved a plaintiff whose injuries from use of a Dalkon Shield did not become manifest until after the manufacturer had petitioned for bankruptcy. *Grady* argued that, under California law, her claim against Robins arose post-petition, when she knew or should have known of her injuries, and therefore the automatic stay did not apply to her claim. This court first found that bankruptcy law, not state law, determines which claims are covered by the automatic stay. *Id.* at 201–02. It then found that Mrs. Grady had a contingent pre-petition claim which was barred by the automatic stay. *Id.* at 203. . . .
>
> Mrs. Grady's claim alleged a tort and arose from the insertion of the Dalkon Shield, which occurred pre-petition. [The condominium association's] claim is for assessments to cover expenses incurred during [the debtor's] post-petition ownership of real property. *Grady* deals with a claim arising from a pre-petition tort, while this case involves a breach of a covenant running with the land that occurred post-petition, and we find *Grady* is clearly distinguishable.

*Id.* at 837.

[8] Additionally, the Court notes that the Debtor's surrendering of the Property had no impact on her status as record owner of same. "Under the Bankruptcy Code, debtor's 'surrender' merely establishes [she] will not oppose the transfer of collateral." *In re Spencer*, 457 B.R. at 612 (citations omitted). "Absent some further action—such as foreclosure, deed in lieu of foreclosure, or short sale or property—surrender does not divest a debtor of ownership and its obligations." *Id.* (citations omitted).

11

the provisions of Section 1328(a) does not apply.[9]

### B. The Motion for Relief from the Automatic Stay is Premature

Having concluded that the post-petition assessments at issue are post-petition debts, the Court must now decide whether Bay Point is entitled to the relief it requests. As noted above, the Association seeks relief from the automatic stay to initiate a state court law suit against the Debtor and obtain a judgment with respect to said unpaid post-petition assessments.

In *Montclair Prop. Owners Assoc., Inc. v. Reynard (In re Reynard)*, 250 B.R. 241 (Bankr. E.D. Va. 2000), Judge Robert G. Mayer, Jr. considered "whether a homeowner's association is prohibited by the automatic stay . . . from collecting post-petition assessments after confirmation of the [C]hapter 13 plan." In *Reynard*, the Court began its analysis by noting that Section 362(a)(1) of the Bankruptcy Code "does not prevent the commencement of a lawsuit to collect a post-petition debt."[10] *Id.* (citations omitted). Finding that "[h]omeowners association fees assessed after the filing of a voluntary petition in bankruptcy are post-petition debts, not pre-petition debts," Judge Mayer went on to conclude that "[the association] does not need relief from the automatic stay to demand payment of post-petition [a]ssociation fees for which the debtors are liable or to file suit to collect those fees." *Id.* (citing *In re Rosenfeld*, 23 F.3d at 836-37; *In re Shuman*, 122 B.R. 317, 318 (Bankr. S.D. Ohio 1990)).

---

[9] As the Association has not filed a proof of claim with respect to the post-petition assessments, the Court concludes that it need not address Section 1328(a)'s treatment of post-petition claims for which a proof of claim has been filed pursuant to Section 1305.

[10] Section 362(a)(1) of the Bankruptcy Code provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).

Nevertheless, Judge Mayer also noted that "the right to undertake collection activities, including filing a lawsuit, to collect a postpetition debt does not allow *all* collection activities." *Id.* (emphasis added). As Judge Mayer observed:

> The automatic stay prevents any act to create, perfect, or enforce any lien against property of the estate, and any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. Consequently, a post-petition creditor who has the right to initiate a suit against a debtor and obtain a judgment for a post-petition debt without violating the automatic stay may not have recourse to execute on all assets that would have been, but for the filing of a [C]hapter 13 petition, property of the debtor. Recourse is limited to property that is not property of the estate.

*Id.* at 244-45. Ultimately, the Court concluded that the homeowner association's "motion for relief to permit execution on property of the estate [was] premature" because it "d[id] not have a judgment upon which it [could] execute . . . [and] [t]he amount of the prospective judgment [was] unknown." *Id.* at 250. The Court stated:

> The amount is a factor to be considered as is the fact that the monthly homeowner association fees are no longer due because of the foreclosure, thereby freeing up one of the items in the debtors' budget. The Association has not yet explored other collection activities that would not affect the success of this [C]hapter 13 plan. The Association is asking for prospective relief that may never be needed. The appropriate time to seek relief from the stay is after a final judgment has been obtained in state court and relief is necessary to execute against property of the estate.

*Id.* In denying the motion for relief from automatic stay, the Court held that "no relief [was] necessary to collect post-petition assessments from property that is not property of the estate," that "[c]ollection activities may only be directed to property of the debtors, not property of the estate," and that "[a]ll post-confirmation earnings are property of the estate." *Id.* As Judge Mayer explained:

> Since the debtor's entire net disposable income must be devoted to the [C]hapter 13 plan, there is nothing left over for a creditor to seize that does not affect a debtor's ability to successfully complete the [C]hapter 13 plan. All post-confirmation earnings—not just the amount of the plan payment—are

13

necessary for the success of a [C]hapter 13 plan and must be property of the post-confirmation [C]hapter 13 estate. They are protected by the automatic stay.

*Id.* at 249. The reasoning of *Reynard* applies equally to the instant case. Stated differently, the Association does not need relief from the automatic stay to initiate a suit to collect post-petition assessments, prosecute that suit to judgment and to enforce that judgment against property that is not property of the estate. Here, all property, except post-petition earnings, vested in the Debtor upon confirmation of the Chapter 13 Plan. (Doc. No. 18.) However, the Association may not, without future order of the Court, garnish the Debtor's post-petition wages, as doing so will impact and potentially jeopardize the integrity of the confirmed Chapter 13 Plan. Further order of the Court is necessary before this may be accomplished, and that order will be forthcoming, if at all, only upon a complete understanding of all relevant factors, including the amount of the judgment—including attorneys' fees—and the status of the Chapter 13 case. As Bay Point has failed to allege that "it has . . . explored other collection activities that would not affect the success of [the Debtor's] [C]hapter 13 [P]lan," the Court concludes that the Association requests prospective relief that may never be needed. *See id.* at 250.

### III. CONCLUSION

"The appropriate time to seek relief from the automatic stay is after [a] final judgment has been obtained in state court[,] and relief is necessary to execute against property of the estate." *In re Reynard*, 250 B.R. at 250. The Court concludes, as a finding of fact and conclusion of law, that Bay Point does not require relief from the stay imposed by 11 U.S.C. § 362 to collect post-petition condominium association assessments from property that is not property of the estate. *See id.* However, "[c]ollection activities may only be directed to property of the debtors, not property of the estate," and "all post-confirmation earnings [of the Debtor] are property of the estate." *Id.*

Accordingly, the Court finds that the Motion for Relief from the Automatic Stay should

be denied. The Court notes that a reasonable settlement should be considered by the parties. If and when the Association obtains a judgment against the Debtor, it must return to this Court to determine the scope of permissible collection activity.[11]

A separate Order will issue.

Upon entry of this Memorandum Opinion, the Clerk of Court is directed to serve via United States Mail, first class, postage prepaid, a copy of this Memorandum Opinion to: Gail Lee Schechter, 5321 Spy Glass Drive, Norfolk, Virginia, 23518; Mark C. Leffler, Esq., Boleman Law Firm, P.C., Convergence Center III, 272 Bendix Road, Suite 130, Virginia Beach, Virginia, 23452; Leilani A. Adams, Esq., Thomas & Associates, P.C., 4176 S. Plaza Trail, Suite 128, Virginia Beach, Virginia, 23452; and to Michael P. Cotter, Esq., Chapter 13 Trustee, 870 Greenbrier Circle, Suite 402, Chesapeake, Virginia, 23320.

DATED:

8-16-2012

FRANK J. SANTORO
United States Bankruptcy Judge

NOTICE OF JUDGMENT OR ORDER
Entered on docket 8/16/12

---

[11] Judgment against the Debtor may only be obtained for post-petition assessments.